Salinas v. Stillman.

---

ANTONIO SALINAS v. C. STILLMAN AND OTHERS.

See this case for facts which constitute good cause for a change of venue.

It is no objection to hearing an application to change the venue, that the parties had announced themselves ready for trial, and had made some progress in the selection of a jury, the empanelment of which could not be completed for want of the requisite number of jurors, in consequence whereof no trial could then be had.

The yellow fever prevailing as an epidemic at the county seat, it was the province of the court to determine whether or not the panel could be completed in the town, and the court was warranted in refusing to call in jurors from the country, and thus expose them to the epidemic.

Counter affidavits, or rebutting testimony as to the grounds of an application for a change of venue, are inadmissible.

After the jury have returned their verdict, which has been received and they have been discharged, and have dispersed, they cannot be recalled and allowed to change the substance of the verdict they have rendered.


ERROR from Nueces.    Tried below before the Hon. James Webb.

Salinas v. Stillman.

This was a suit brought by Antonio Salinas against Charles Stillman, Elisha Basse, Robert H. Hord, and several others, in the county of Cameron, on the 10th day of March, 1851, for a labor of land in said county, embracing a portion of the city of Brownsville, the county seat of said county.

At the Fall Term, 1853, the defendants filed a motion to change the venue to the nearest adjoining county free from the objections set forth in the affidavit accompanying the motion, made by six disinterested citizens.  The affidavit stated that a fair and impartial trial could not be had in the county of Cameron, or any other of the counties within the twelfth judicial district, which have been organized.  The grounds stated were, because of the small number of legally qualified jurors within said counties, and because those who are competent to sit upon a jury in them, are influenced by a party feeling in relation to the claims of title set up by the respective parties in this cause, and have expressed an opinion on the issues therein.  That some years ago a controversy arose between the different and adverse claimants to the lands lying immediately about and in the neighborhood of the city of Brownsville, as well as to the land on which the city is situated, including the tract involved in this suit; which controversy has become embittered by popular feeling on both sides, and has led to the organization of two hostile parties along the line of the Rio Grande within this district, embracing the population of the counties aforesaid, and has governed and controlled all local elections within the same.  The affidavit stated circumstances to demonstrate the extent or pitch to which the excitement had grown, as by the formation of processions on both sides, the display of badges and banners, with inscriptions indicative of high feeling against each other; and alleged that there is scarcely a citizen residing in the said counties who is not a partizan on one side or the other in this controversy.  That so decided is the opinion on both sides as to the main issues in this suit, as to render it impossible to obtain a fair and competent jury to render a verdict in this cause, or any other involving the same titles.

The plaintiff offered counter affidavits, but the court ruled that, as to the county of Cameron, the defendants' affidavit was not

traversable, but permitted counter affidavits to be introduced to traverse the facts alleged as to any other county. The counter affidavits of three disinterested citizens, stated in effect that, to the best of their belief, the party feeling referred to did not exist in the county of Hidalgo, and that there a fair and impartial trial can be had. The court deemed the counter affidavits did not sufficiently traverse the allegations of the defendants' affidavit, and ordered a change of venue to the county of Nueces, (a county without the twelfth judicial district.)

Before presenting the motion and affidavit for a change of venue, the parties had announced themselves ready for trial; a jury ordered to be empanneled, and four jurors had been received and accepted by the parties. The sheriff being unable to complete the panel without going beyond the limits of the city of Brownsville, the court instructed the sheriff that, in consequence of the prevalence of the yellow fever as an epidemic in the city, no order would be made to call in jurors from the country. In consequence thereof, it was found impossible to empannel a sufficient number of jurors to try the case; and thereupon the defendants' counsel presented the motion. To all which rulings the plaintiff excepted.

After the return of the verdict by the jury, the defendants, Basse and Hord, on the succeeding day filed their motion, asking that the jury be recalled to explain and correct their verdict, alleging that it was uncertain whether they found for all the defendants, or only for the two defendants in whose favor they found a special verdict. The motion was granted, the jury was recalled, and the second verdict rendered as stated in the opinion, and upon which a judgment was rendered in favor of all the defendants for their costs, and in favor of Basse and Hord for the recovery of the land in controversy, and, for their damages, $3000.

*S. Powers* and *Robert Hughes*, for the appellant.

*Allen & Hale*, for the appellees.

WHEELER, C. J.—It does not appear from the record that the

application for a continuance was brought to the notice of the court. There is no ruling upon it for the court to revise. The rulings of the court presented by the record for revision are, 1st, the awarding of a change of venue; 2d, permitting the jury to be recalled to reform their verdict.

We are of opinion that the court did not err in awarding a change of venue. It is unnecessary to consider, in this case, how far the ruling of the court upon an application for a change of venue in civil cases, is properly subject to revision by this court. The application was supported by the rquisite number of witnesses, (Hart. Dig., Art. 636,) and set forth, we think, a good cause for a change of venue. It is objected that the application was improperly entertained at the time of making it, because the parties had announced themselves ready for trial, and had made some progress in selecting a jury. But it appears that the court was satisfied that the jury could not be completed from the city of Brownsville, where the court was sitting. Of that it was the province of the court to judge. In the absence of anything appearing to the contrary, we must suppose that the proper efforts were used to obtain a jury. Failing in the city, we think the court were warranted in refusing to call in juries from the country, and thus expose them to an epidemic which was prevailing in the city. As the jurors who had been empanneled must be discharged, and a trial could not then be had in that county, we see nothing to prevent the court from entertaining the application to change the venue. We think it was properly entertained at the time.

It is further objected that the court refused to hear counter affidavits or evidence as to the grounds of the application. In this we think the court did not err. The statute does not seem to contemplate the production of counter affidavits or rebutting evidence. It provides that the court shall have power to change the venue " on good and sufficient cause set forth and duly supported by oath or affirmation of three disinterested citizens of the Republic, (now State,) the sufficiency of which evidence shall be determined by the presiding judge," and the court is to decide upon the legal sufficiency of the cause or causes set forth and the credibility of the witnesses required to be produced in support of the

application. It is upon the "sufficiency" of this evidence that the court is to determine. But we are of opinion that counter affidavits were not intended to be admitted, and that the court properly refused to receive them for another reason. The same prejudice which would render the change of venue proper and necessary to a fair and impartial trial, would be likely to facilitate the obtaining of counter affidavits, and too greatly to embarrass, if not altogether defeat the right intended to be secured by the statute. It is not unlikely that persons laboring under the most inveterate prejudice against the party seeking to change the venue, would be the last to believe in the existence of such a prejudice, and the first to give evidence against the application. The court might have to decide upon the evidence of prejudiced witnesses, without being able to detect the prejudice which gave its complexion to the evidence. In view of the embarrassment it would occasion in determining upon the right, we think counter affidavits ought not to be received. The only case to which we have found any reference, where this question has been considered, is the case of Walter v. Taylor, (7 Ind., 110,) and there it was held that upon an application for a change of venue in a civil case counter affidavits could not be admitted.

The remaining question is whether it was error to recall the jury, and cause or permit them to change their verdict.

It sufficiently appears by the record that the jury returned into court their verdict on one day, and were permitted to disperse, being discharged, doubtless, from the further consideration of the case; and on the following day, on motion of the defendants, Basse and Hord, stating that the verdict was uncertain, and asking that the jury be again called into court to explain and correct it, the jury were called in accordingly, and rendered another verdict, upon which the court proceeded to give judgment. The first verdict was in these words: "We the jury find for the defendants Basse and Hord the land in controversy, and assess the damages at three thousand dollars." The last was as follows: "We the jury find for the defendants; and that the defendants Elisha Basse and Robert H. Hord upon the plea in reconvention, have and recover of the plaintiff, Antonio Salinas, the land in controversy, and

particularly described in the plaintiff's petition, and that the said Elisha Basse and Robert H. Hord have and recover of the plaintiff the sum of three thousand dollars, damages and costs."

There were several defendants besides Basse and Hord who had plead their defences; but they were the only parties to the suit who had appeared to claim a trial and verdict upon the issues presented by their pleadings. They had put in their defence, pleading in reconvention. The other defendants had pleaded other defences; but did not appear in person or by attorney to ask a trial upon them. The plaintiff also failing to appear, it would have been proper for the court to dismiss the case for the want of prosecution, as to the absent defendants. And this might have been done after the jury had returned their verdict in favor of the defendants Basse and Hord, who had appeared and proceeded to trial upon their plea in reconvention. The consequence would have been that the judgment would not be a bar to another action by the plaintiff against the absent defendants. Such is not the effect of the judgment rendered on the second verdict. It is a complete bar to another action by the plaintiff against any of the defendants for the same cause, saving, of course, the right to a second action under the statute. It is manifest, therefore, that the last verdict was materially different in its legal effect, requiring the rendition of a different judgment upon it, from that which should have been rendered upon the first, had it been permitted to stand. Was it competent for the court to allow the jury to be recalled, and thus to change the substance of their verdict a day after it had been rendered? We think not. It is difficult to fix a definite limit to the discretion of the court in permitting the jury to amend their verdict, under its supervision, before they have been discharged. But it seems to be agreed that after the jury have returned their verdict, and it has been received and they have been discharged and have dispersed, they cannot be recalled and allowed to change the substance of the verdict they have rendered. And such it seems was the case here. There is no statement of facts, it is true; but the motion, the entries and the bill of exceptions, leave little room to doubt that such was the action of the court. The farthest that courts are believed to have

2Y

gone in permitting the amendment of verdicts in such cases, is, when the jury have decided the issue, but have failed to return a complete verdict, to permit them to complete it; as, for instance, in an action for a sum certain in money when they have found for the plaintiff, and nothing remains to complete the verdict, but the computation of the sum, to permit them to make the computation. (McKean v. Paschal, 15 Tex. Rep., 37; Sutcliff v. Gilbert, 8 Ohio Rep., 405; 2 Graham and Waterman on New Trials, 551.) Here the verdict first returned by the jury did not find the issue as to any of the defendants but Basse and Hord. When recalled they were permitted to find the issues as to the other defendants, which they not only had not found, but which had not been submitted for their finding by the parties upon the trial. This was not merely the perfecting of a defective verdict; it was the finding of a new and substantially different verdict from that first found by the jury; and upon issues not submitted to the jury for their decision by the parties until after they had returned their verdict. A verdict thus rendered cannot, we think, with propriety lay the foundation of a judgment. If, after having agreed upon their verdict, a jury were to separate without leave of the court or the consent of the parties, and subsequently assemble and change their verdict, it would constitute that degree of misbehavior in the jury for which a verdict ought to be set aside. The danger of abuse would scarcely be less, if, after having returned their verdict into court, they were permitted to be reassembled on the next day at the motion of one of the parties, in the absence of the others, and then to change their verdict, as in this instance. The suggestion in the motion of the defendants Basse and Hord that the verdict first rendered was uncertain, was unfounded. It was neither uncertain nor incomplete, but was a clear and distinct finding for the only parties who appeared and asked a trial. When the jury had thus rendered a verdict, settling the rights of the parties before the court and upon which a judgment could be entered, to permit them to be recalled afterwards and to change it as was here done, we think was error for which the judgment must be reversed. The judgment cannot be supported upon the first verdict, for it was not rendered upon that verdict, nor can we

reform, or revise and render judgment upon it, for it was rejected by the party and court, upon the finding of the second verdict. We cannot know that but for the latter the court might not have awarded a new trial. We are of opinion that the judgment must be reversed and the cause remanded.

Reversed and remanded.